UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMMY KINNER, | |
| Plaintiff, | Case No. 1:25-cv-00056-AKB |
| vs. | **THIRD REVIEW ORDER**<br>**BY SCREENING JUDGE** |
| IDOC ATTORNEY GENERAL 2022 to current; KLINTON HUST, IDOC INTERSTATE COMPACT COORDINATOR, IDOC WARDENS, JOSH TEWALT, and MARISSA DOAN (I.C.C), | |
| Defendants. | |

Plaintiff Timmy Kinner is an Idaho Department of Correction (IDOC) prisoner currently housed in Florida. Because Kinner is a three-strikes litigant under 28 U.S.C. § 1915(g), he cannot proceed with this action unless he shows that he is "under imminent danger of serious physical injury." The Court ordered Defendants to file a Martinez Report to inform the Court of Kinner's conditions of confinement in Florida.[1] The Court now reviews the Martinez Report and Kinner's additional filings.

---

[1]    In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), rather than dismissing the complaint or sending it out for service and an answer, the district court ordered prison officials to conduct an investigation to aid the court in  deciding jurisdictional issues and screening under 28 U.S.C. § 1915(a). *Id*. at 319. The United States Court of Appeals for the Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

**THIRD REVIEW ORDER BY SCREENING JUDGE - 1**

Kinner began his sentence in Idaho where he was housed in protective custody due to possible danger from other inmates as a result of his criminal conviction involving six victims who were children (one first degree murder and five aggravated assault or battery charges). *See* Case CR01-18-31475, *State of Idaho v. Timmy Earl Kinner, Jr.*[2] Kinner's interstate transfer to the IDOC-contracted Florida prison (FDOC) occurred on May 28, 2022. The Court notified Kinner that any claims arising before January 24, 2023, were barred by the statute of limitations; therefore, the Court focuses on claims within the statute of limitations period. (*See* Dkt. 15 at 3).

The allegations in this case repeat allegations from Kinner's prior or ongoing Florida cases where he asserted that prison officials have harmed him or failed to protect him *See, e.g.*, *Kinner v. FDOC Director, et al.*, No. 3:25-cv-00367-WWB-SJH (Case 367) (dismissing without prejudice under the three strikes rule a complaint wherein Kinner alleged that, since his interstate compact transfer to Florida in 2022, various correctional officers at various facilities have failed to protect him, physically assaulted him, and denied him medical treatment). Kinner asserts some of these same allegations here, but instead of suing Florida officials and correctional officers, he sues Idaho prison officials who work with interstate transfers, asserting that they have not properly supervised the Florida officials who have custody of him.

The United States District Court for the Middle District of Florida has reviewed the same or similar allegations of physical harm in several cases and has consistently concluded that Kinner has not met the "imminent danger" criteria to have his cases heard in forma pauperis. (*See, e.*g,, Case 367, Dkt. 4). Kinner asserts that he is not being treated fairly by the Florida "judge in local racist court." (*Id.*). Some of Kinner's Florida cases have proceeded or are proceeding to a

---

[2]     *See* Idaho Supreme Court repository online at https://portal-idaho.tylertech.cloud/ odysseyportal/ Home/WorkspaceMode?p=0 (accessed 8/14/25).

**THIRD REVIEW ORDER BY SCREENING JUDGE - 2**

conclusion on the merits, demonstrating that the Middle District of Florida court has carefully reviewed the allegations of his many complaints individually and does not simply use a broad brush to dismiss all of Kinner's claims. *See Kinner v. Moore*, No. 3:24-cv-01131-JEP-SJH (Kinner permitted to proceed on claims that on July 11, 2024, five Florida correctional officers beat him in his cell, causing serious physical injuries); *Kinner v. Cartwright*, No. 3:24-cv-01294-WWB-MCR (Kinner proceeding on claims that on September 13, 2024, three Florida correctional officers beat him, causing serious physical injuries).

Here, Kinner cannot sue Idaho officials for acts that happened in Florida unless he meets the criteria for showing they had personal participation in the incidents and that they exhibited deliberate indifference. A supervisor may be held liable under § 1983 if (1) he or she had "personal involvement" in the constitutional deprivation, or (2) "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" exists (punctuation altered and citation omitted). *See also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of []" subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (punctuation altered and citation omitted).

As noted above, because Kinner has three strikes, he also must show IDOC officials' acts are causing him to be in imminent danger of serious bodily harm. A prisoner subject to the three-strikes provision may meet the imminent danger exception and proceed in forma pauperis if he

**THIRD REVIEW ORDER BY SCREENING JUDGE - 3**

alleges an ongoing danger existing at the time he files the complaint. *Andrews v. Cervantes,* 493 F.3d 1047, 1053 (9th Cir. 2007). "The prisoner may meet this requirement by 'alleg[ing] that prison officials continue with a practice that has injured him or others similarly situated in the past,' *id.* at 1057, or that there is a continuing effect resulting from such a practice." *Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015). In addition, there must be a "nexus" between the claims in the complaint and the allegations of imminent danger." *Id.* at 1187, 1190.

The IDOC has provided Kinner's records relevant to his Florida custody. The record shows that Kinner would like to be moved from Florida to a prison in a different state because he believes he is being harassed and targeted for murder by prison staff. (*See* Dkts. 11, 15 at 4). In October 2024, he wrote a letter to the IDOC interstate coordinator stating that he had written 64 requests to be moved "bcuz I meet criteria safety wise & my rites r being violated." (Dkt. 17-3 at 7 (verbatim)). Defendant Captain Klinton Hust informed Kinner that his placement in Florida was appropriate under IDOC policies and that his placement would be reviewed annually, as dictated by policy. *Id*. at 8.

An FDOC progress report from January 2026 shows that Kinner is housed in "Max Management" because he poses a danger to staff and other inmates. During the review period, he was issued 19 Disciplinary Reports (DRs). Between July and October 2025, he received five DRs. (Dkt. 19 at 17-18).

On October 26, 2024, he stabbed an officer multiple times in the torso with a homemade weapon. (Dkt. 19 at 6-7). On March 6, 2024, he damaged the sprinkler head in his cell; when it was repaired and he was being placed back in his cell, he grabbed a metal object and cut a staff member's forearm.

**THIRD REVIEW ORDER BY SCREENING JUDGE - 4**

On March 8, 2024, Kinner was declared a psychological emergency, because he stated he was going to hurt or kill any officer he could so that he could be transferred out of FDOC custody. (Dkt. 19 at 9). The progress report contains numerous disciplinary incidents including smearing feces on his window and on his delivery slot flap, throwing urine and feces at an officer, ripping up a bedsheet, refusing to submit to restraint procedures, and masturbating in front of a mental health professional. *Id*. Records from prior years contain descriptions of similar disciplinary incidents.

Kinner has filed a multitude of prison records, including many grievances that show that he is bothered by incidents involving food, dirty food trays, toenail clippers, and mail, and that he feels like killing staff members for their participation in these incidents. (*See, e.g.*, Dkts. 20, 21, 23, 24).

Some very recent examples of Kinner's grievances are the following:

- On February 22, 2026, Kinner complained that Officer Dickey gave a menu to another inmate, and when Kinner asked to see a menu, Officer Dickey refused to give him a copy. (Dkt. 21-2 at 54, 57). The response was that there was a copy of the master menu on the wing and available for review upon request. (*Id*. at 56).

- On May 4, 2026, Kinner complained: "On 5/4 Gray (& Drake) deprived me of brkfst! Sgt Price also involved! D. Johnson refuse any legal mail. Everett & Kyle Knight also involved! This is y I want to kill sum PPL; disrespectful! I keep trying to fite urgg but yall make it hard & it's getting stronger daily!" (*Id*. at 17). The response was that mental health would follow up. (*Id*.).

- On May 6, 2026, Kinner complained that he needed a medical memo to be cuffed in front due to a permanent injury. He was advised to discuss that issue with medical staff, rather than use the grievance process. (Dkt. 23 at 2-5).

- On May 6, 2026, Kinner complained: "My toe nails are thick, I can't clip 'in & it hurts, soreness!! I'm used to clipping nails every 2-3 days

to keep 'm low as possible!!" (*Id*. at 14). He was advised to address this issue with security. (*Id*.).

- On May 6, 2026, Kinner complained: "Wow!!! So much evil here in this building, & I try to avoid it & not be caught up in it to point were I'm playing into it, but, sadly it's overwhelming & I get yall tryn a drug me to the hellfire w/ yall!! I don't want to kill, but evil must die & yall keeping me here & keep trying me & I need (to) release from this pressures!! Johnson retaliating w/ my legal mail. Shares lying, refusing my food items in RDP bag, trying to & creating problems unnecessarily!!" (*Id*. at 15 (verbatim)). The response was that this "has been documented and responded." (*Id*.).

- On May 6, 2026, Kinner complained: "Daily I wrestle w/ thoughts to respond violently to the evil that I'm subjected to constantly! The puzzle aren't enuff! I need to leave FDOC!! I'm gonna snap eventually, it's inevitable!" (*Id*. at 16 (verbatim)). The mental health director responded (illegible). (*Id*.).

- On May 12, 2026, Kinner complained: "Have u ever ate salad w/ dressing off (wet) paper plate? It's a mess!! Styrofoam plate is required." (*Id*. at 13). The response was that he was served on an approved product for his level of security. (*Id*.).

- On May 13, 2026, Kinner complained that Officer Dickey and other staff were harassing him and playing mind games and engaging in "petty playing w/ food [and] hygiene." (*Id*. at 12).

- On May 16, 2026, he complained that Officer Dickey keeps playing with his food, being "foul and nasty," and retaliating against him.( *Id*. at 11). The response was a mental health follow up. (*Id*.).

- On May 20, 2026, he complained that certain officers were contaminating his food daily. (*Id*. at 10).

- On May 28, 2026, he complained that he is constantly being targeted by different people, and "spirits" have him in a "constant disturbed state." *Id.* at 9. He reported that certain officers were "plotting to kill him and do him any harm they can." (*Id*. at 9). The response of May 29, 2026, was that medical would follow up. (*Id*.).

- On June 1, 2026, he complained that he had seizures whenever he was near certain officers, because his stress increased. He said these officers allegedly contaminated or denied food, and committed other misconduct that "has me sick." (*Id*. at 8). He was seen by a medical provider on the same day. (*Id*.).

**THIRD REVIEW ORDER BY SCREENING JUDGE - 6**

In general, these exhibits do not show he is in imminent danger of serious bodily harm because FDOC staff want to kill or injure him, as he alleges, but that FDOC staff may be in danger of Kinner injuring or killing them.

A summary of Kinner's mental health history shows:

> Mr. Kinner has multiple historic diagnoses of psychosis, and he at times experiences symptoms of psychotic disorder that require treatment. He also demonstrates profound antisocial personality traits, and he appears to blame much of his criminal behavior on mental illness rather than acknowledge the impact his antisocial beliefs have on his behavior. Since his placement in IDOC in June 2021, he has not taken psychiatric medication and has not exhibited any current signs of psychosis, either positive or negative. He does demonstrate sub-clinical paranoia, but this does not significantly impact his ability to function in his environment.

Kinner's diagnoses may be contributing to his unfounded fears that FDOC staff are trying to kill him. The record reflects that Kinner is receiving mental health and medical treatment and monitoring in Florida. (*See, e.g.*, Dkts. 24-1 at 28,  Dkt 21-2 at 17 to 23, Dkt. 24-1 at 12 to 16 & 19-24, 28).

There is insufficient evidence in the record to show that Kinner is in imminent danger of serious bodily harm by FDOC staff or other inmates. *Id*. The progress report shows that Kinner is a difficult inmate to manage, but that FDOC officials generally are responding appropriately. Kinner appears to be abusing the FDOC grievance system by filing multiple grievances nearly every day, many of which are frivolous, repetitive, and without adequate factual foundation, but his grievances consistently receive attention and responses. The entirety of the record shows he has adequate access to the FDOC grievance system, mental health providers, medical providers, and the courts.

**THIRD REVIEW ORDER BY SCREENING JUDGE - 7**

Kinner has not shown that IDOC officials have notice of any threats of harm that have a factual foundation. The 2026 FDOC progress report on Kinner is comprehensive and appropriate. It does not appear that conditions of confinement issues are not being adequately addressed by the FDOC. In addition, Kinner is pursuing claims that FDOC officers harmed him through the Florida federal district courts.

The Court concludes that Kinner is not in imminent danger of serious bodily harm by FDOC officials or staff. Therefore, he has not stated a cognizable supervisory claim against IDOC officials, and he may not proceed in forma pauperis.

For these same reasons, Kinner is not entitled to a temporary restraining order or preliminary injunctive relief, and his motions will be denied. (Dkts. 20, 21). Issuance of a temporary restraining order or preliminary injunction is appropriate only where a plaintiff can show (1) there are "serious questions going to the merits," (2) there is "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011). Preliminary injunctive relief is appropriate only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Kinner has not made any of these showings.

To the extent that Kinner is claiming he is imprisoned for a wrongful conviction, he cannot pursue such claims in a civil rights actions. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (when a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from . . . imprisonment, his sole federal remedy is a writ of habeas corpus.").

Kinner must pay the filing fee of $405 and file a second amended complaint that states a claim within 14 days after entry of this Order if he desires to proceed.

**THIRD REVIEW ORDER BY SCREENING JUDGE - 8**

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Preserve and Supplement Record (Dkt. 20) is GRANTED to the extent that the filings have been docketed by the Clerk of Court and reviewed by the Court.

2. Plaintiff's Motion Seeking Preliminary Injunction and Temporary Restraining Order (Dkt. 21) is DENIED.

3. Plaintiff must pay the filing fee of $405 within 14 days after entry of this Order, or this case will be dismissed and judgment entered without further notice.

4.  If he pays the fee, he must file a second amended complaint of no more than 20 pages that states a claim against the Idaho defendants that meets the *Starr v. Baca* standard. He may file no more than 20 pages of exhibits showing that he exhausted his claims contained in the second amended complaint, and nothing else.

5. If he does not pay the fee, he must not file a second amended complaint, exhibits, or any document.

6. Plaintiff shall file nothing further in this case for any reason unless he pays the entire filing fee by the deadline set forth above. Plaintiff is notified that any further documents he presents for filing will not be filed by the Clerk of Court but will be discarded.

DATED: July 31, 2026

*Amanda K. Brailsford*

Amanda K. Brailsford
U.S. District Court Judge

**THIRD REVIEW ORDER BY SCREENING JUDGE - 9**